# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARVIN WRIGHT, AIS 245540, | : |
| Petitioner, | : |
| vs. | :     CA 11-0633-WS-C |
| FREDDIE BUTLER, | : |
| Respondent. | |

## REPORT AND RECOMMENDATION

Marvin Wright, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his October 6, 2010 first-degree robbery conviction in the Circuit Court of Mobile County, Alabama; he was sentenced to life imprisonment, pursuant to Alabama's Habitual Felony Offender Statute, on December 9, 2010. The Alabama Court of Criminal Appeals affirmed Wright's conviction and sentence by unpublished memorandum opinion issued on May 20, 2011. *See Wright v. State,* 107 So.3d 235 (Ala.Crim.App. 2011) (table). Petitioner's application for rehearing was denied, *see id.*, and his petition for writ of certiorari was denied by the Alabama Supreme Court on September 23, 2011 (Doc. 14, Exhibit H).

Wright took no action to collaterally attack his conviction and sentence in the state courts of Alabama; instead, he filed the instant federal habeas corpus action in this Court on or about November 6, 2011. (*See* Doc. 1, at 12.) Therein, Wright essentially raises in this Court the same claims he raised on appeal to Alabama's appellate courts. (*Compare id.* at 7-8 & 13-16 *with* Doc. 14, Exhibit B.)

This cause is before the Court on the petition (Doc. 1) and respondent's answer with attachments (*see* Doc. 14). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *See Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted), *cert. denied sub nom. Means v. Tucker,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012).

## **FACTUAL BACKGROUND**

On March 23, 2009, Marvin Wright robbed at gunpoint the Waffle House at Airport Boulevard and I-65 in Mobile, Alabama. (*See* T.T. 182, 187-189, 191, 200, 203, 207, 258-261, 262 & 271.) Two waitresses working the nightshift, Margie Stallworth and Tiffany Gordon, identified Wright in court as the robber (*see* T.T. 191, 207 & 262)[1] and,

---

[1] Prior to trial, a lengthy suppression hearing was conducted to determine whether Wright's motion to suppress the in-court identification by Stallworth and Gordon should be granted. (*See* T.T. 10-71.) After hearing the evidence, the trial court denied Wright's motion to suppress. (*Id*. at 73-74 & 75.)

> THE COURT: . . . I've read the cases Mr. Bergstrom gave me this morning . . ., and applying the totality of circumstances criteria, it doesn't appear to me that the circumstances of this case would demonstrate that there's a likelihood of irreparable misidentification predicated upon what I've heard.
>
> Both of these ladies seem to have an extended period of time to make observation – I'm not giving weight to it. I'm just saying from a ***constitutional standard***, they had the opportunity to see the person they later identified. . . . [A]pparently, . . . [he] was brought back for this showup identification within a reasonably short period of time. There's no indication the officers made any suggestive statements to them. I think the officers followed good protocol in segregating the witnesses so they would make their independent identification one at a time.
(Continued)

in addition, Yellow Cab driver, Tony Rocio, testified that he picked up Wright from the Motel 6 on the Beltline at Airport and I-65 and took him to several locations, including the aforementioned Waffle House[2] (T.T. 210-211, 214, 217, 219-222 & 226).[3]

---

> And so, applying the standard as I understand it, I don't think that the showup can be found to have so reasonably tainted their in-court identification, assuming they make an in-court identification today, that it would make the in-court identification inadmissible. So, I'll deny the motion to suppress as it relates to the issue of in-court identification of these two witnesses.

(*Id*. at 73-74 (emphasis supplied); *see also id*. at 75 ("And unlike some of the cases that are cited to me by Mr. Bergstrom, I am told – I haven't heard any evidence, but as a proffer [--] that . . . there is expected to be some corroboration, the finding of the red shirt in the motel room; perhaps, the driver who took him from the Waffle House at the relevant time to where he was apprehended at the motel. So, . . . unlike some of the other cases where there's nothing . . . to tie the defendant to the case other than . . . the in-court identification [that is not the case here]. . . . [H]aving said all that, I'll deny your motion to suppress.").)

Also, prior to trial, the Court conducted a hearing regarding whether to allow Dr. Thomas S. Bennett to testify regarding the reliability of eyewitness identification. (*See* T.T. 82-101.) Dr. Bennett actually gave testimony during this hearing (*id*. at 83-93 & 95-96) and the Court engaged in legal discussion with counsel regarding whether the issue presented was a *Frye* issue, as opposed to a *Daubert* issue (*see* T.T. 96-101). In addition, counsel could not cite the court a case reported in Alabama holding a trial court in error for not "allowing someone with Dr. Bennett's qualifications to testify as to the infirmities of eyewitness identification[.]" (*Id*. at 94; *see also id*. at 99 (counsel could not show that any circuit judge in Mobile County had allowed such testimony).) The trial court deferred ruling on this expert issue (*see* T.T. 101 ("[L]et me think about it.")) but ultimately determined, following conclusion of the first day of trial, that Dr. Bennett would not be allowed to testify (*see* T.T. 245-246 ("I have considered carefully the proffer of Dr. Bennett as an expert witness in the field of the infirmity of eyewitness identification, and, I think, applying the appropriate standards, I am not going to allow him to be qualified as an expert and give opinions. I think the Defendant is clearly free to argue about the infirmities and point out what you wish, but I don't think it's appropriate to have an expert witness or at least not Dr. Bennett as an expert witness to give opinion testimony on that subject."); *compare id. with* T.T. 84-85 (Dr. Bennett's concessions that he had never testified before the trial judge or any other state circuit court or federal court regarding the reliability of eyewitness identification and that he had published no articles in learned treatises or recognized professional journals on the reliability of eyewitness identification)).

[2] Stallworth and Gordon testified that Wright arrived at the Waffle House in a Yellow Cab (T.T. 184 & 261) and, following the robbery, both women saw what appeared to be the same Yellow Cab exiting the parking lot (T.T. 190 & 276).

[3] After Rocio dropped off Wright at the Motel 6, he called into his dispatcher to report "empty" and then pulled into the mall area and parked his cab in a manner such that he could see the Waffle House. (T.T. 223-224.) Not long after he parked, Rocio heard screeching (Continued)

3

Police took Wright into custody in Room 133 of the Motel 6. (T.T. 280-281.) According to Officer William Tomberlin, after he took Wright into custody, the defendant spontaneously commented that he was "staying in room 218[]" and "he didn't do no robbery." (T.T. 281.) Wright was taken from the motel to the Waffle House; he was identified by Stallworth and Gordon as the robber. (*Compare* T.T. 309 & 374-376 *with id.* at 201-202 & 273-275.) Corporal Nick Crepeau searched both motel rooms; in Room 133 he recovered a "reddish/burgundyish-colored T-shirt" and a black wallet belonging to a Wilona Kennedy (T.T. 293 & 295)[4] and the search of Room 218 netted a pair of blue jeans and $78.00[5] (*id.* at 298 & 299).

Wright testified in his defense that on the day in question he took a cab to get something to eat about 3:00 or 4:00 p.m. (T.T. 364) and later that evening got a ride with a friend to check on his work schedule at the Waffle House on Springhill Avenue (*compare id.* at 364 *with id.* at 359). Wright denied making any statements to the police or a cab driver after he was arrested (*see* T.T. 369 & 373) and specifically told Corporal Crepeau that he was not involved in any "'type of robbery or anything else.'" (T.T. 378.)

---

tires and then observed numerous police cruisers all around the Beltline/Airport Boulevard area, including two cruisers that pulled into the Waffle House parking lot. (T.T. 224-225.) Rocio reported into his dispatcher and the dispatcher called him back and told him to go to the Motel 6. (*Id.* at 227.) Sometime after his arrival at the motel, Rocio saw Wright and testified that Wright made the following spontaneous utterance: "'Tell them I paid the cab fare.'" (*Id.* at 230.)

[4] Kennedy worked at the Waffle House on Springhill Avenue near I-65 (T.T. 295), the same restaurant where Wright was employed (*see* T.T. 359). Crepeau interviewed Kennedy at that location and she identified the wallet as her wallet. (T.T. 295.; *see also id.* at 297.)

[5] As pointed out by Wright's attorney on cross-examination, the $78.00 falls well short of the more than $400.00 taken from the Waffle House. (T.T. 305.) Moreover, police did not recover a weapon (*id.*) and no fingerprint evidence connected Wright to the inside of the Waffle House (*id.* at 332).

Q Did you rob the Waffle House on Airport Boulevard, Marvin Wright?

A No, I did not.

(T.T. 382.)

On October 6, 2010, a jury of Wright's peers returned a verdict finding him guilty of first-degree robbery as charged in the indictment. (T.T. 459-460.) On December 9, 2010, Wright was sentenced to life imprisonment pursuant to Alabama's Habitual Felony Offender Statute. (*Compare* Sentencing Hearing Transcript, at 473 *with id*. at 462-465 (stipulation that Wright had four prior Class C felony convictions).)[6]

The Alabama Court of Criminal Appeals affirmed the trial court's judgment, by unpublished memorandum opinion entered on May 20, 2011. *See Wright v. State*, 107 So.3d 235 (Ala.Crim.App. 2011).

> On appeal, Wright asserts that the circuit court erred by: 1) allowing the eyewitnesses to identify him in court after they participated in an unduly suggestive out-of-court identification procedure; and 2) refusing to allow him to present an expert witness on eyewitness identification.

> I.

> Wright first asserts that the circuit court erred by allowing the eyewitnesses to identify him in court after they participated in an unduly suggestive out-of-court identification procedure. The procedure to which Wright refers is commonly known as a one-man showup identification.

> After Wright left the Waffle House, his cab took him to the Motel 6 where he was staying. Officers soon apprehended him there and brought him back to the Waffle House for a showup identification. While in handcuffs, Wright stood outside of the Waffle House, and Stallworth,

---

[6] Wright was allowed to make a statement prior to sentencing. (*Id*. at 469-470.) "I understand that I'm here today to be sentenced for a crime that I was found guilty of by a jury of my peers even though I maintain my innocence. I'm full of remorse. I don't wish no harm on nobody, and I just ask God and I ask you, Your Honor, to have mercy on me as you impose the sentence." (*Id*. at 470.)

Gordon, and Gilchrist were asked by the police if they could identify Wright. Stallworth and Gordon testified at trial that they identified Wright as the individual who robbed the Waffle House during the showup identification.

> The United States Supreme Court has long recognized that the practice of showing a suspect singly for purposes of identification has been widely condemned as being <u>unnecessarily suggestive and conducive to irreparable mistaken identifications that constitute a denial of due process</u>. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 104, 97 S.Ct. 2243, 2248, 53 L.Ed.2d 140, 147 (1977) . . . . In <u>United States v. Wade</u>, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court sharply criticized suggestive pretrial identifications, such as one-man showups, calling them <u>[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification</u>[.]
>
> . . .
>
> The danger inherent in a one-man showup, where a witness is shown a single suspect and asked, "Is that the man?" is twofold. First, a one-man showup conveys a clear message that "the police suspect this man." Second, a one-man showup does not give the witness a choice of identifying any other person as being the perpetrator of the crime charged. Consequently, when a one-man showup is used to identify the perpetrator of a crime, the reliability of the witness's identification is <u>not put to an objective test</u>, such as a live or photographic lineup, in which a single suspect must be chosen from a group of persons possessing similar physical characteristics.

<u>Ex parte</u> Frazier, 729 So.2d 253, 254-55 (Ala. 1998) . . . . Although a one-man showup is inherently dangerous, it is permitted where conducted promptly after the commission of a crime or demanded by necessity, emergency or exigent circumstances.

> In determining the constitutional adequacy of pretrial identification procedures and the admissibility of identification testimony, the central question is whether, under the totality of the circumstances, the identification was reliable. This determination involves the application of a <u>two-pronged test</u>.
>
> [T]he required inquiry is two-pronged. The first question is <u>whether the initial identification procedure was unnecessarily . . . or impermissibly . . . suggestive</u>. If it is

6

found to have been so, the court must then proceed to the question whether the procedure found to have been unnecessarily or impermissibly suggestive was <u>so conducive to irreparable mistaken identification . . . or had such a tendency to give rise to a very substantial likelihood of irreparable misidentification</u> . . . that allowing the witness to make an in-court identification would be a denial of due process.

In evaluating the likelihood of misidentification, the court must consider the following factors:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness's degree of attention, [3] <u>the accuracy of the witness's prior description of the criminal</u>, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

Applying the <u>Neil v. Bigger[s]</u> factors for determining whether there is a likelihood of misidentification, this Court holds that most of the factors weigh in favor of finding that the identifications were reliable. Both Stallworth and Gordon had ample opportunity to view Wright at the time of the crime. Stallworth testified that she observed his face for 30 or 45 minutes. Gordon also estimated that Wright was in the Waffle House for 30 to 45 minutes, and stated that she was looking at his face the whole time. Both women also testified that all the lights in the Waffle House were on that evening. Stallworth and Gordon were attentive of Wright from the time he arrived because his manner of arrival, by a cab, was unusual to them. Stallworth also paid special attention to Wright due to his multiple visits to the restroom. Wright called further attention to himself by placing orders with both waitresses prior to the robbery. Additionally, Stallworth and Gordon testified that during the showup identification they were certain Wright was the robber. Finally, the showup identification was performed within an hour of the robbery.

Only the third factor, the accuracy of the description, does not weigh heavily in favor of a finding that the identifications were reliable. Stallworth and Gordon told the police that Wright was a black male wearing a red t-shirt and blue jeans. When Wright was taken into custody and brought back for the showup identification, Wright was wearing a white tank top and camouflage pants. However, officers did find a red t-shirt in room 133, the motel room in which Wright was apprehended, and a pair of blue jeans in room 218, the room registered to Wright. Stallworth also described Wright's stature to police, estimating that he was 6'2" and 190 pounds. At trial, Wright testified that he was 6'0" and 250 pounds. Corporal Nick Crepeau, with the Mobile Police Department, countered that Wright appeared to have gained weight

7

since the robbery, and that during questioning on the night of the robbery, Wright told him he was 6'0" and 190 pounds.

Weighing all the Neil v. Bigger[s] factors, this Court holds that there was no substantial likelihood of misidentification. The circuit court, therefore, correctly denied Wright's motion to suppress.

II.

Wright also asserts that the circuit court erred by refusing to allow him to present an expert on memory and eyewitness identification. A human memory expert may be introduced in cases that turn on an eyewitness's identification. Ex parte Williams, 594 So.2d 1225, 1227 (Ala. 1992). However, the admissibility of such an expert is, like all other types of expert testimony, subject to the discretion of the trial court. Furthermore, the trial court's rulings on the admissibility of such evidence will not be disturbed on appeal absent a clear abuse of that discretion.

In Williams, the Alabama Supreme Court considered the admissibility of a human memory expert in an attempted-murder and first-degree-robbery case. The victim was unable to definitively identify the defendant in a photographic lineup, but was able to identify him in a live lineup. The defendant tried to admit the testimony of a human memory expert who intended to testify regarding the human memory processes relating to eyewitness identification. The circuit court refused to allow the testimony, and this Court affirmed. The Alabama Supreme Court affirmed the decision as well, holding that it was not an abuse of discretion to rule the testimony inadmissible because the expert admitted that he was not familiar with the facts and had not been in contact with the victim.

This Court is faced with a similar situation in the present case. Wright's expert admitted that he had not interviewed Stallworth or Gordon, and that the only information he had regarding this case came from the witnesses' accounts. Defense counsel indicated that the expert was only being offered to testify generally about the problems associated with eyewitness identifications. Because Wright's expert had not interviewed the eyewitnesses, it was not an abuse of discretion for the circuit court to exclude the expert's testimony.

For the foregoing reasons, the judgment of the circuit court is affirmed.

(Doc. 14, Exhibit D, at 2-7 (footnotes omitted; most internal citations and quotation marks omitted; emphasis retained).) Wright's motion for rehearing was denied, *Wright*

8

*v. State*, 107 So.3d 235 (2011) (table), and his petition for writ of certiorari to the Alabama Supreme Court was denied on September 23, 2011 (Doc. 14, Exhibit H).

As previously indicated, Wright filed his petition seeking habeas corpus relief in this Court on November 6, 2011. (*See* Doc. 1, at 12.) Therein, as aforesaid, petitioner essentially asserts the same claims he raised to the Alabama Court of Criminal Appeals and Alabama Supreme Court on direct appeal, namely: (1) the due process clause prohibits identification testimony at trial that derives from an impermissibly suggestive procedure which may lead, in turn, to an irreparably mistaken identification of the sort that occurred in this case; and (2) the trial court's denial of his request to present expert testimony hindered his ability to present a defense and to call witnesses on his behalf. (*See id.*, at 7-8 & 13-16.)

## CONCLUSIONS OF LAW

**A.** **Standard of Review**. In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief on any claim adjudicated on the merits in state court if "it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[7]

---

[7] As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(Continued)

9

*Jones v. Secretary, Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.), *cert. denied sub nom. Jones v. Tucker,* ___ U.S. ___, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011); *see also Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (noting a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."), *cert. denied sub nom. Cox v. Tucker,* ___ U.S. ___, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011).[8]

> First, we can grant relief if the state court decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). A state court decision will be contrary to Supreme Court precedent where "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). . . .
>
> Second, we can grant relief where the state court decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." §

---

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

[8] The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

10

2254(d)(1). "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522.

Third, § 2254(d)(2) allows for relief where the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence. § 2254(e)(1); *see also Rutherford v. Crosby,* 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record").

*Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005), *cert. denied sub nom. Callahan v. Allen,* 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006); *see also Frazier v. Bouchard,* 661 F.3d 519, 530-531 (11th Cir. 2011), *cert. denied sub nom. Frazier v. Thomas,* ___ U.S. ___, 133 S.Ct. 410, 184 L.Ed.2d 58 (2012).

B. **<u>Alleged Unreliability of Identifications</u>**. In ground one of his petition, Wright asserts that the Due Process Clause prohibits identification testimony at trial that derives from an impermissibly suggestive procedure that may lead, in turn, to irreparably mistaken identifications of the sort that he contends occurred in this case.

It is clearly established that "[a]n identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification can constitute a Fourteenth Amendment violation, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and a conviction based on eyewitness identification following a pretrial identification is invalid if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Davis v.*

11

*McNeil,* 2009 WL 3459226, *27 n.16 (S.D. Fla. Oct. 27, 2009); *see also Key v. McNeil,* 2010 WL 5811481, *4 (N.D. Fla. Dec. 27, 2010) ("The due process issue is whether 'the confrontation conducted . . . was so *unnecessarily suggestive* and conducive to *irreparable* mistaken identification that [a defendant] was denied due process of law.'") (citation omitted; emphasis in original), *report and recommendation adopted,* 2011 WL 587353 (N.D. Fla. Feb. 10, 2011).

> Synthesizing previous decisions, we set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and reiterated in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the approach appropriately used to determine whether the Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement. The Court emphasized, first, that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary. *Id.*, at 107, 109, 97 S.Ct. 2243; *Biggers,* 409 U.S., at 198, 93 S.Ct. 375. Even when the police use such a procedure, the Court next said, suppression of the resulting identification is not the inevitable consequence. *Brathwaite,* 432 U.S., at 112-113, 97 S.Ct. 2243; *Biggers,* 409 U.S., at 198-199, 93 S.Ct. 375.
>
> A rule requiring automatic exclusion, the Court reasoned, would "g[o] too far," for it would "kee[p] evidence from the jury that is reliable and relevant," and "may result, on occasion, in the guilty going free." *Brathwaite,* 432 U.S., at 112, 97 S.Ct. 2243; see *id.*, at 113, 97 S.Ct. 2243 (when an "identification is reliable despite an unnecessarily suggestive [police] identification procedure," automatic exclusion "is a Draconian sanction," one "that may frustrate rather than promote justice").
>
> Instead of mandating a *per se* exclusionary rule, the Court held that the Due Process Clause requires courts to assess, on a case-by-case-basis, whether improper police conduct created a "substantial likelihood of misidentification." *Biggers,* 409 U.S., at 201, 93 S.Ct. 375; see *Brathwaite,* 432 U.S., at 116, 97 S.Ct. 2243. "[R]eliability [of the eyewitness identification] is the linchpin" of that evaluation, the Court stated in *Brathwaite*. *Id.*, at 114, 97 S.Ct. 2243. Where the "indicators of [a witness'] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion, the identification should be suppressed. *Id.*, at 114, 97 S.Ct. 2243. Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury.

*Perry v. New Hampshire,* ___ U.S. ___, 132 S.Ct. 716, 724-725, 181 L.Ed.2d 694 (2012) (footnote omitted; emphasis in original); *see also Key, supra,* at *4 ("[T]he Eleventh

12

Circuit follows the two-step analysis set forth in *Neil v. Biggers*. First, the court must determine 'whether the original identification procedure was *unduly* suggestive.' If it was, then the court must 'consider whether, under the totality of the circumstances, the identification was nonetheless reliable' by application of the five factors identified in *Neil v. Biggers*. If the pretrial identification procedure was not unduly suggestive, the court need not reach the five factors identified in *Neil v. Biggers*.") (internal citations omitted). As the Supreme Court reiterated in *Perry, supra,* "[a]mong 'factors to be considered' in evaluating a witness' 'ability to make an accurate identification,'" 132 S.Ct. at 725 n.5, it had previously listed the following: "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Id*., quoting *Brathwaite,* 432 U.S. at 114, 97 S.Ct. 2243, in turn quoting, *Biggers,* 409 U.S. at 199-200, 93 S.Ct. 375.

In this case, the Alabama courts determined—at least implicitly—that the one-man showup was unduly suggestive (*compare* Doc. 14, Exhibit A, T.T. 73-74 *with* Doc. 14, Exhibit D, at 3-6); however, both Alabama courts then determined (as recently reiterated was the proper approach in *Perry, supra*) under the totality of circumstances set forth in *Neil v. Biggers* and *Manson v. Brathwaite*, that no due process violation occurred and the showup identification procedure did not violate petitioner's constitutional rights (*see, e.g.,* Doc. 14, Exhibit D, at 5-6). The undersigned agrees with the Alabama courts that the identifications of Wright as the robber made by Stallworth and Gordon had sufficient reliability and, therefore, were not contrary to, or an unreasonable application of, Supreme Court precedent (that is, *Biggers* and *Brathwaite*).

13

The two Waffle House waitresses testified that they had plenty of opportunity to view Wright at the time of the crime; the restaurant was well lit at the time of the crime; only about an hour of time elapsed between the robbery and the confrontation; and both women were sure that petitioner was the individual who robbed the Waffle House. (*See* Doc. 14, Exhibit A, T.T. 13-28 & 46-54.) Thus, Wright is not entitled to habeas corpus relief in accordance with either prong of § 2254(d)(1).[9]

C.  **Expert Testimony**.  In the second and final ground of his habeas corpus petition, Wright contends that the trial court's decision to exclude expert testimony about eyewitness reliability violated his constitutional rights because it hindered his ability to present a defense and call witnesses on his behalf.

The Eleventh Circuit long ago recognized that "[if] the exclusion of [expert] testimony [concerning eyewitness identification] in federal court is not fundamentally unfair, it follows, *a fortiori*, that exclusion by the state court is also permitted." *Johnson v. Wainwright*, 806 F.2d 1479, 1485 (11th Cir. 1986), *cert. denied sub nom. Johnson v. Dugger*, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 157 (1987). In other words, in order to be entitled to federal habeas corpus relief, petitioner would have "to demonstrate that exclusion of the expert testimony rendered his trial fundamentally unfair because the testimony was material to a crucial, critical and highly significant matter." *Id*. (citation omitted); *see also Rodriguez v. Wainwright*, 740 F.2d 884, 885 (11th Cir. 1984) ("Even a state evidentiary violation does not support habeas corpus relief where there has been no denial of fundamental fairness.") (citation omitted), *cert. denied,* 469 U.S. 1113, 105

---

[9] In addition, although Wright states in a conclusory manner in his complaint that the state court did not consider the "specific facts" in his case (*see* Doc. 1, at 13), he simply has not shown that the factual findings made by the Alabama Court of Criminal Appeals are unreasonable by clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(2) & (e)(1).

S.Ct. 797, 83 L.Ed.2d 790 (1985). Like the Eleventh Circuit in *Johnson, supra,* this Court should not find that the trial court's exclusion of expert testimony on the reliability of eyewitness identification rendered Wright's trial fundamentally unfair inasmuch as the matters about which Dr. Bennett would have testified were "matters of common sense, well within the ordinary experience of a jury[,]" *Johnson, supra,* 806 F.2d at 1486, and the trial court allowed Wright's attorney to cross-examine Stallworth and Gordon at length regarding their identifications (*see* Doc. 14, Exhibit A, T.T. 192-205, 208, 263-276 & 277) and argue in closing statements that the identifications were not reliable (*see id*. at 422-426, 430-431 & 432-434). That this conclusion is correct cannot be gainsaid given that the admission of expert testimony regarding the reliability of eyewitness identification is within the sound discretion of the trial judge under Alabama law, *see Ex parte Williams,* 594 So.2d 1225, 1227 (Ala. 1992) ("[W]e hold that expert testimony on the subject of human memory can be introduced into evidence in cases turning on an eyewitness identification. We further hold, however, that the admissibility of such evidence is, like all other type of expert testimony, subject to the discretion of the trial court[.] Furthermore, the trial court's rulings on the admissibility of such evidence will not be disturbed on appeal absent a clear abuse of that discretion.") (citations omitted), and the Eleventh Circuit has "'consistently looked unfavorably on' expert testimony about eyewitness reliability and held that 'a district court does not abuse its discretion when it excludes expert testimony on eyewitness identification.'" *United States v. Owens,* 445 Fed.Appx. 209, 216 (11th Cir. Oct. 13, 2011) (quoting *United States v. Smith,* 122 F.3d 1355, 1357 & 1359 (11th Cir. 1992)), *reh'g en banc denied,* 682 F.3d 1358 (11th Cir. 2012),[10] *cert. denied,* ___ U.S. ___, 133 S.Ct. 1492, 185 L.Ed.2d 551 (2013).

---

[10] *See id*. at 1359 ("Having been given the opportunity to change our court's (Continued)

In consideration of the foregoing, the trial court's exclusion of expert testimony on the reliability of eyewitness identification did not render Wright's trial fundamentally unfair and, therefore, he is not entitled to habeas corpus relief based on this claim. *See, e.g., Johnson, supra*, 806 F.2d at 1486. Accordingly, "[t]he state courts' rejection of this claim on direct appeal should [] not be disturbed." *Hunter v. McDonough*, 2008 WL 8660730, *7 (S.D. Fla. Jan. 3, 2008), citing 28 U.S.C. § 2254(d) and *Williams v. Taylor, supra*.

D. **Certificate of Appealability**. Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied entirely on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c),

---

position that appellate courts are never permitted to review for abuse of discretion the exclusion of expert testimony regarding the reliability of eyewitness identifications, we should avail ourselves of it.") (Barkett, C.J., dissenting).

a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to Wright's *Neil v. Biggers* and expert testimony claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson*, CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States*, 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same

procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Marvin Wright is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden, Attorney General, State of Alabama,* 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 9th day of October, 2013.

        s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**